**NOT FOR PUBLICATION**

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

|  |  |
|---|---|
| THEODORE COHEN,<br><br>               Plaintiff,<br><br><br>      v.<br><br><br>ANDREW TELSEY,<br><br>               Defendant. | Civ. No.  09-2033 (DRD)<br><br><br>**O P I N I O N** |

*Appearances by:*

LAW OFFICES OF CHRISTOPHER B. TURCOTTE, P.C.
Christopher B. Turcotte, Esq.
575 Madison Avenue, Suite 1006
New York, New York 10022

HERTEN, BURSTEIN, SHERIDAN, CEVASCO, BOTTINELLI, LITT & HARZ, LLC
Patrick Papalia, Esq.
Court Plaza South
21 Main Street
Hackensack, New Jersey 07601

     *Attorneys for Plaintiff*

STERNS & WEINROTH
Marshall D. Bilder, Esq.
Christopher E. Torkelson, Esq.
Jonathan H. Katz, Esq.
50 West State Street, Suite 1400
Trenton, New Jersey 08607

RONALD B. TAYLOR, P.C.
Ronald B. Taylor
333 West Hampden Avenue, Suite 710
Englewood, Colorado 80110

     *Attorneys for Defendant*

**DEBEVOISE, Senior District Judge**

This matter comes before the Court on defendant, Andrew Telsey's, motion to dismiss and plaintiff, Theodore Cohen's, cross-motion to amend the Complaint.  On April 30, 2009, Cohen filed a Complaint against Telsey alleging claims of common law and securities fraud, and a claim of negligence.   Cohen claims that Telsey, with the aid and assistance of senior management at V-Formation, Inc. ("V-Formation"), fraudulently induced Cohen to invest in V-Formation based on willfully false and material misrepresentations and omissions.  Telsey argues that the Complaint should be dismissed, pursuant to Fed. R. Civ. P. 12(b)(6), because Cohen's federal claims are time barred and because his state law claims rely on the allegation that Telsey had an affirmative duty to make disclosures and take actions regarding the membership of the V-Formation Board of Directors Audit Committee;  Telsey argues that no such duty existed.

For the reasons set forth below, Telsey's motion to dismiss will be granted in part and denied in part; Count One through Count Seven will be dismissed, and Count Eight will survive the motion to dismiss.  Cohen's cross-motion for leave to amend the complaint will be granted in part and denied in part; Cohen will not be granted leave to amend Count One through Count Six, but will be granted leave for Count Seven.

## I.  BACKGROUND

A.      **The Allegations of the Complaint**

The following are the allegations of the complaint, which are, for the purpose of this motion only, accepted as true and construed in the light most favorable to the plaintiff.  Phillips v. County of Allegheny, 515 F.3d 224, 233 (3d Cir. 2008).   Cohen generally claims that Telsey violated federal and state law when he, with the aid and assistance of senior management at V-

Formation, fraudulently induced Cohen to invest in V-Formation based on willfully false and material misrepresentations and omissions. (Compl. ¶ 5.)

### i.       The Parties

Cohen is a resident of North Caldwell, New Jersey. (Compl. ¶ 3.) Telsey is an attorney licensed to practice in the State of Colorado, specializing in transactional matters, securities compliance, shell mergers, business and corporate law and other mergers and acquisitions. (Id. ¶ 4.) Telsey's principal place of business is in Englewood, Colorado. (Id.)

### ii.       V-Formation.

In January 1995, V-Formation was incorporated in New Jersey. (Id. ¶ 6.) It was touted by its senior management, in public filings, marketing materials and otherwise, as an innovative roller skating company which, in addition to selling inline skates, also manufactured sports apparel and held many lucrative and innovative patents that greatly advanced inline skating technology. (Id.)

V-Formation's Chief Executive Officer, Richard Stelnick, was convicted in 1986 of selling fraudulent insurance policies to senior citizens in New Jersey; he was sentenced to nine years in prison. (Id. ¶ 7.) Stelnick was also a defendant in securities fraud actions in Delaware and New York, in which he was accused of making fraudulent misrepresentations to investors regarding various aspects of their investments. (Id. ¶ 8.) The Complaint does not allege when Stelnick was a defendant in these cases in Delaware and New York or how the cases were resolved.

In May 1997, Cohen was introduced to Stelnick and other senior management of V-Formation, including Chief Financial Officer Rogert Miragliotta, and Executive Vice President Theodore Ellenis. (Id. ¶ 9.) Miragliotta and Ellenis advised Cohen that V-Formation would be

sold or merge with a sporting goods giant immediately, for hundreds of millions of dollars, which would result in an immediate "six-figure return" of Cohen's investment. (Id.)

While he was a shareholder in V-Formation, Cohen asked Stelnick, Maragliotta and Ellenis to permit him to review V-Formation's corporate books and records but was advised by these individuals that access to such records was not allowed because it would constitute a "breach of confidentiality." (Id. ¶ 10.) Cohen alleges that he made this request during "the initial stages of the fraud," but does not provide a more specific date or period of time. (Id.) Cohen alleges that at all relevant times V-Formation's management was aware that no sale of V-Formation was imminent and that there was no reasonable prospect for sale of the company. (Id. ¶ 11.)

### iii.    Buckeye Oil & Gas

In March 1986, Buckeye Oil & Gas, Inc. ("Buckeye") was incorporated under the laws of the State of Colorado, with a principal place of business in Englewood, Colorado. (Id. ¶ 12.) Buckeye was formed for the purpose of exploiting oil and gas venture opportunities and, according to public filings, Buckeye acquired an oil and gas lease, and drilled a well on the property that resulted in a dry hole. (Id.) This venture depleted all of Buckeye's resources and the company remained dormant from approximately September 1987 until July 1999. (Id.) In July 1999, Buckeye filed a registration statement with the Securities and Exchange Commission ("SEC") to become a public company. (Id.) Telsey is identified as legal counsel to Buckeye in public filings. (Id.)

According to Buckeye's 10-KSB filing on March 9, 2001, covering the year ending December 31, 2000 ("Buckeye 2000 10-KSB"), Buckeye never commenced any operational

activities and was a "shell company;" the sole purpose of that shell company was to locate and consummate a merger or acquisition with a private entity.  (Id. ¶ 13.)

In 2000, Buckeye had two directors:  President Gregory Skufca and Secretary-Treasurer Darlene Kell.  (Id. ¶ 14.)  Kell, who had been  Telsey's office manager and paralegal since 1994, was appointed as a director and officer of Buckeye in October 2000.  According to the Buckeye 2000 10-KSB, neither Skufca nor Kell filed the Form 4 to report their appointments as directors and officers.  (Id.)

Cohen alleges that Skufca serves as a regular, titular president of shell companies that Telsey attempts to market in reverse takeovers.  (Id. ¶ 15.)  Skufca provides rent-free office space in Englewood, Colorado for these shell companies.  (Id.)  For example, Skufca served in this capacity for HA Spinnaker, Inc. in a merger with Zaba International Holdings USA, Inc., orchestrated by Telsey in 1997-1998.  (Id.)

### iv.     V-Formation's Merger with Buckeye

V-Formation's senior management contacted Telsey in late 2000 to effect a merger, or reverse takeover, with Buckeye.  (Id. ¶ 16.)  In exchange for 478,082 shares of V-Formation's common stock and a cash payment of $150,000, V-Formation merged with Buckeye and became a publicly reporting company in March 2001.  (Id. ¶ 17.)  Telsey was engaged as V-Formation's securities counsel.  (Id.)  Pursuant to a Notice of the Board of Directors of V-Formation, in December 2002 Telsey was to be issued 250,000 shares of V-Formation common stock, valued at $3.00 per share, to serve as a compensatory award for "past and present professional services." (Id. ¶ 18.)  Ultimately, Telsey received 240,000 shares of V-Formation common stock and Ms. Kell received 10,000 shares of V-Formation common stock.  (Id.)

At the time that V-Formation merged with Buckeye, Cohen had invested $564,000 with V-Formation. (Id. ¶ 19.) Cohen was never advised of Skufca's or Ms. Kell's relationship with Telsey or what Cohen claims was a possible conflict of interest. (Id.) Cohen invested approximately $1.3 million with V-Formation and purchased approximately 586,500 shares of common stock up until the time that V-Formation ceased conducting business around the spring of 2005. His investment with V-Formation included his acquisition of 472,140 shares and investments in excess of $700,000 after the merger with Buckeye. (Compl. ¶ 27.) In the Complaint, Cohen does not specify dates he made any of the above stock purchases.

    *v.*    ***V-Formation's SEC Filings***

V-Formation's 10-QSB and 10-KSB filings contained the following biography for Stelnick:

> Richard Stelnick, our founder, currently serves as our Chief Executive Officer and Chairman of the Board. Prior to founding our Company in 1995, from December 1987 through January 1995, Mr. Stelnick served as the Chief Executive Officer of Star-Lo Electric, Inc., Morristown, NJ, a privately held corporation where, within seven years, Mr. Stelnick transformed Star-Lo Electric from a small residential family owned business into a profitable commercial and industrial electrical contractor. Mr. Stelnick's primary responsibilities at our Company are Strategic Corporate Development and marketing. Mr. Stelnick is an active manager in our day-to-day operations, primarily focusing on marketing and promotion of all our product lines. Mr. Stelnick devotes substantially all of his business time to our business affairs.

(Id. ¶ 21.) This biography did not include a reference to Stelnick's conviction in 1986 for selling fraudulent insurance policies to senior citizens in New Jersey or that he was a defendant in securities fraud actions in Delaware and New York. Cohen alleges that Telsey committed a material misstatement and omission in not including the information about Stelnick's conviction in 1986 or posture as a defendant in the cases in Delaware and New York. (Id. ¶ 22.) Cohen

also alleges that Telsey "was also complicit in failing to make this material disclosure by neglecting to make timely filings with the SEC." (Id. ¶ 23.)  V-Formation made a 10-K filing on April 24, 2003 ("April 2003 10-K"), but did not make a 10-Q filing for the first, second or third quarters of 2003 until late December 2003.  (Id.)  The December 2003 filing was V-Formation's Amended 2002 10-K for the year ending December 21, 2002 ("December 2003 10-K").  (Id. ¶ 25.)  V-Formation did not make any further quarterly or annual SEC filings.  (Id.)

### vi.    V-Formation's Audit Committee

By letter dated August 21, 2002 to V-Formation CFO Miragliotta, copying Telsey, V-Formation's independent auditor advised that, pursuant to the Sarbanes Oxley Act of 2002, V-Formation's Audit Committee must be constituted of non-management members of the Board of Directors.  (Id. ¶ 24.)  Cohen alleges that Telsey knew or should have known of this requirement. (Id.)  In order to comply with the requirement, V-Formation's audit firm advised that it needed to make new appointments to its Audit Committee.  (Id.)  The Audit Committee at the time included Miragliotta and Stelnick, the CEO, among its three members.  (Id.)  V-Formation's December 16, 2003 filing of its Amended 2002 10-K (for the year ending December 31, 2002), disclosed that the members of the Audit Committee remained unchanged.  (Id. ¶ 25.) By not taking action to change the membership of the Audit Committee, Cohen alleges that Telsey was complicit in allowing senior management to systemically misappropriate, embezzle and convert company assets to their own personal use and benefit without appropriate, independent oversight in accordance with Sarbanes-Oxley and other securities laws.  (Id. ¶ 26.)

## B.    Claims Against Telsey

The Complaint contains eight counts against Telsey:  violation of § 17(a) of the Securities Act of 1933 ("Securities Act"); violation of § 10(b) of the Securities Exchange Act of

1934 ("Exchange Act"); violation of SEC Rule 10b-5; violation of § 11 of the Securities Act; violation of § 20(a) of the Exchange Act; violation of § 301 of the Sarbanes-Oxley Act; common law fraud; and negligence.  Cohen seeks compensatory and punitive damages.

## II.  DISCUSSION

Telsey argues that Cohen fails to support the elements of each of his claims as pled in the Complaint.  Telsey contends that all the federal securities claims, Count One through Count Six, are time-barred by the relevant statutes of limitations and repose.  Telsey further argues that Cohen has not sufficiently pled that V-Formation or Telsey had a duty to disclose information relating to Stelnick's 1986 conviction, or that the alleged omission was deceptive.  Further, Cohen did not adequately plead the elements of scienter, materiality, or loss causation, with the particularity required by the Private Securities Litigation Reform Act of 1995 ("PSLRA") and Federal Rule of Civil Procedure 9(b).  Telsey argues that no private rights of action exist for Cohen's § 17(a) (Count One) and 15 U.S.C. § 78j-1(m) (Count Six).  Telsey notes that Count Four for violation of § 11 does not allege a violation as against Telsey because a § 11 claim is premised on misrepresentations in registration statements, and the V-Formation issued its sole registration statement in 2000, before Telsey became involved with the company.  As for Count Five of the Complaint, Telsey contends that a claim under § 20(a), which makes "control persons" jointly and severally liable for violations of the Exchange Act, must be premised on an underlying violation by the company.  Further, he contends that Cohen has not sufficiently pled that Telsey qualifies as a "control person."  As for Count Seven for common law fraud, Telsey argues that the pleadings are deficient under Rule 9(b) as to the elements of misrepresentation, intent, and reliance.  Telsey argues that Count Eight for negligence fails to state a claim because

Telsey had no duty to make the disclosures that Cohen alleges he failed to make.  For these reasons, Tesley moves, pursuant to Rule 12(b)(6), to dismiss all of the claims against him.

Cohen argues that the statute of limitations should be tolled due to fraudulent concealment, and, in the alternative, states that he was not on inquiry notice until he took depositions in 2008 for a state court case he filed against Stelnick, V-Formation, and others. Cohen argues that Telsey misrepresented and omitted reference to Stelnick's 1986 conviction in public filings with the SEC, and that Telsey's conduct in doing so was at least reckless.  Cohen argues that he continued to invest in V-Formation because he was ignorant of Stelnick's conviction.  Cohen argues that the misrepresentation/omission is material because a conviction for insurance fraud is a fact that any reasonable investor would have considered important in making the decision to invest in V-Formation.  Cohen contends that the court should imply a private right of action for Count One and Six, since some courts have implied a right of action under § 17(a), and that although no courts have implied a private right of action under 15 U.S.C. § 78j-1(m), Cohen argues that the court should do so as a matter of first impression.

**A.      Consideration of Matters Outside the Complaint**

The Supreme Court recently instructed that when deciding a motion to dismiss in a federal antifraud securities action, courts must consider the complaint in its entirety, as well as other sources courts ordinarily examine when ruling on Rule 12(b)(6) motions to dismiss, in particular, documents incorporated into the complaint by reference, and matters of which a court may take judicial notice.  Tellabs, Inc. v. Makor Issues & Rights Ltd., 551 U.S. 308, 320 (2007). Telsey urges the court to take judicial notice of relevant SEC filings by V-Formation, including: (1) the SB2 Registration Statement filed August 22, 2000 ("Registration Statement"); (2) 8K Notice dated March 16, 2001 and filed April 23, 2001 ("April 2001 8K"); and (3) 10-QSB for

the Quarter ending September 30, 2003 filed December 23, 2003 ("December 2003 10-Q").  The

Court of Appeals for the Third Circuit held that in considering a motion to dismiss, a court may

take judicial notice of public disclosure documents filed with the SEC.  Oran v. Stafford, 226

F.3d 275, 289 (3d Cir. 2000).  The court will also take judicial notice of the V-Formation SEC

filings referenced by name, and thus incorporated in the Complaint:  (1) April 2003 10-K and (2)

December 2003 10-K.

The Registration Statement, filed August 22, 2000, advises potential investors that:

"[f]ifteen years ago, Mr. Stelnick was involved in a case relating to the failure to make proper

disposition of property, and while Mr. Stelnick vehemently denied the allegations, he was

convicted and served time for a short period."  The document lists Ted Cohen as a member of the

Capital Review Committee of the Board of Directors.  Telsey's name does not appear in the

document.

The April 2001 8K, which announces the merger of Buckeye and V-Formation, effective

March 16, 2000, makes the same statement about Stelnick's conviction as the Registration

Statement, cited above.  Telsey's name does not appear in this document.  Neither the April 2003

10-K nor the December 2003 10-K mentions Stelnick's 1986 conviction.  The December 2003

10-Q discloses to investors that V-Formation had incurred substantial losses and may not be able

to continue business "as a going concern."

Telsey also requests that the court take judicial notice of a verified complaint ("State

Court Complaint") filed by Cohen against Richard Stelnick, V-Formation, Barbara Chervenak,

John Does 1-10, ABC Corporations 1-10, and fictitious entities, on October 14, 2005 in the

Superior Court of New Jersey, Law Division, Essex County.  A district court may "take judicial

notice of documents filed in other courts…not for the truth of the matters asserted in the other

litigation, but rather to establish the fact of such litigation and related filings" and such documents may be used in the consideration of motions to dismiss under Rule 12. <u>Kramer v. Time Warner, Inc.</u>, 937 F.2d 767, 774 (2d Cir. 1991); <u>see</u> Federal Rule of Evidence 201; <u>United States v. Walters</u>, 510 F.2d 887, 890 n.4 (3d Cir. 1975) (taking judicial notice of briefs and petitions filed in state courts to determine whether petitioner had exhausted his state remedies); <u>Iacaponi v. New Amsterdam Cas. Co.</u>, 379 F.2d 311 (3d Cir. 1967) (taking judicial notice of prior state proceedings concerning the fraud alleged in the complaint and dismissing on the basis of <u>res judicata</u>).  Telsey attached the State Court Complaint to his moving papers, and Cohen did not object.  (Deft. Br. Ex. B.)  Further, Cohen refers to the state court case in his moving papers various times, including a statement that:  "Telsey's fraud became truly apparent to Cohen as a result of depositions conducted of former V-Formation directors and/or officers in the state action."  (Plf. Br. at 11.)  The court will take judicial notice of the State Court Complaint for the limited purpose of determining the timeliness of Cohen's current claims against Telsey.  The State Court Complaint alleges a complex scheme by Stelnick and others to defraud Cohen of his investments in V-Formation.  Paragraph nine of the State Court Complaint alleges:

> [u]pon information and belief, in or around 1983, Stelnick was indicted by the State of New Jersey on charges that he sold fraudulent insurance policies to New Jersey senior citizens.  Stelnick was found guilty of those charges in May 1986 and was sentenced to nine years in prison.

## B.    Standard of Review

Federal Rule of Civil Procedure 12(b)(6) permits a court to dismiss a complaint for failure to state a claim upon which relief can be granted.  When considering a motion under Rule 12(b)(6), the court must accept the factual allegations in the complaint as true and draw all reasonable inferences in favor of the plaintiff.  <u>Morse v. Lower Merion Sch. Dist.</u>, 132 F.3d 902, 906 (3d Cir. 1997).  The court's inquiry "is not whether plaintiffs will ultimately prevail in a trial

on the merits, but whether they should be afforded an opportunity to offer evidence in support of their claims." In re Rockefeller Ctr. Prop., Inc., 311 F.3d 198, 215 (3d Cir. 2002).

The Supreme Court recently clarified the standard for a motion to dismiss under Rule 12(b)(6) in two cases: Ashcroft v. Iqbal, 129 S. Ct. 1937 (2009), and Bell Atlantic Corp. v. Twombly, 550 U.S. 544 (2007). The decisions in those cases abrogated the rule established in Conley v. Gibson, 355 U.S. 41, 45-46 (1957), that "a complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim, which would entitle him to relief." In contrast, the Court in Bell Atlantic held that "[f]actual allegations must be enough to raise a right to relief above the speculative level." 550 U.S. at 545. The assertions in the complaint must be enough to "state a claim to relief that is plausible on its face," id. at 570, meaning that the facts alleged "allow[] the court to draw the reasonable inference that the defendant is liable for the conduct alleged." Iqbal, 129 S. Ct. at 1949; see also, Phillips v. County of Allegheny, 515 F.3d 224, 234-35 (3d Cir. 2008) (in order to survive a motion to dismiss, the factual allegations in a complaint must "raise a reasonable expectation that discovery will reveal evidence of the necessary element," thereby justifying the advancement of "the case beyond the pleadings to the next stage of litigation.").

When assessing the sufficiency of a complaint, the court must distinguish factual contentions – which allege behavior on the part of the defendant that, if true, would satisfy one or more elements of the claim asserted – from "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements." Iqbal, 129 S. Ct. at 1949. Although for the purposes of a motion to dismiss the court must assume the veracity of the facts asserted in the complaint, it is "not bound to accept as true a legal conclusion couched as a factual allegation." Id. at 1950. Thus, "a court considering a motion to dismiss can choose to begin by identifying

12

pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth."  Id.


C.      **Heightened Pleadings Standards**

Federal Rule of Civil Procedure 9(b) requires that "in all averments of fraud or mistake, the circumstances constituting fraud or mistake shall be stated with particularity," but that "[m]alice, intent, knowledge and other conditions of mind of a person may be alleged generally." Rule 9(b)'s heightened pleadings standard "gives defendants notice of the claims against them, provides an increased measure of protection for their reputations, and reduces the number of frivolous suits brought solely to extract settlements."  In re Burlington Coat Factory Sec. Litig., 114 F.3d 1410, 1417 (3d Cir. 1997).  "To satisfy this standard, the plaintiff must plead or allege the date, time and place of the alleged fraud or otherwise inject precision or some measure of substantiation into a fraud allegation."  Federico v. Home Depot, 507 F.3d 188, 200 (3d Cir. 2007).  Although Rule 9(b)'s requirements are stringent, "courts should be sensitive to situations in which sophisticated defrauders may successfully conceal the details of their fraud."  In re Rockefeller Ctr. Prop., Inc. Sec. Litig., 311 F.3d 198, 217 (3d Cir. 2002) (internal quotations omitted).  Where it can be shown that the requisite factual information is peculiarly within the defendant's knowledge or control, the rigid requirements of 9(b) may be relaxed.  Id.  However, "even when the defendant retains control over the flow of information, boilerplate and conclusory allegations will not suffice.  Plaintiffs must accompany their legal theory with factual allegations that make their theoretically viable claim plausible."  Id. (internal quotations omitted).

The Private Securities Litigation Reform Act of 1995 ("PSLRA") created two additional heightened pleadings requirements for plaintiffs in private securities actions under the Exchange Act in which a plaintiff alleges that a defendant made an untrue statement of material fact, or omitted to state a material fact necessary in order to make the statements made, in the light of the circumstances in which they were made, not misleading.  15 U.S.C. § 78u-4(b).  Counts Two, Three and Five fall within the purview of the PSLRA.  First, the complaint must:

> specify each statement alleged to have been misleading, the reason or reasons why the statement is misleading, and, if an allegation regarding the statement or omission is made on information and belief, the complaint shall state with particularity all facts on which that belief is formed.

Id.  Further, for claims that require scienter, the complaint must, with respect to each act or omission alleged to violate the Exchange Act, "state with particularity facts giving rise to a strong inference that the defendant acted with the required state of mind."  Id.  The twin goals of the PSLRA are to "curb frivolous, lawyer-driven litigation, while preserving the investors' ability to recover on meritorious claims."  Tellabs, Inc. v. Makor Issues & Rights, Ltd., 551 U.S. 308, 322 (2007).  The Court of Appeals, noting that both provisions of the PSLRA require facts to be pled with "particularity," determined that 9(b) is "comparable and effectively subsumed" by the pleading requirements of the PSLRA.   Inst'l Investors Group v. Avaya, 564 F.3d 242, 253 (3d Cir. 2009).

**D.      Statute of Limitations and Repose**

Telsey argues that all of Cohen's claims of securities fraud — Count One through Count Six — are barred by the applicable statutes of limitations and repose.  Pursuant to 28 U.S.C. § 1658(b)(2), fraud based claims under federal securities laws are subject to a two-year statute of limitations and a five-year statute of repose:

14

> [A] private right of action that involves a claim of fraud, deceit, manipulation, or contrivance in contravention of a regulatory requirement concerning the securities laws, as defined in section 3(a)(47) of the Securities Exchange Act of 1934 (15 U.S.C. 78c(a)(47)), may be brought not later than the earlier of—
>
> (1) 2 years after the discovery of the facts constituting the violation; or
>
> (2) 5 years after such violation.

28 U.S.C. § 1658(b). Telsey argues that the statute of repose is an absolute bar and is not subject to tolling; Cohen argues that the equitable doctrine of fraudulent concealment tolls the running of the statute of limitations until the plaintiff discovers the cause of action or discovers facts which should put him on notice of it. Telsey is correct.

Unlike the two-year statute of limitations, which begins to run after the cause of action accrues, the five-year period beginning at the time of the violation is a statute of repose meant to serve as a cutoff for a cause of action. Lampf, Pleva, Lipkind, Prupis & Petigrow v. Gilbertson, 501 U.S. 350, 363 (1991) (construing the statute under the previous one- and three-year structure). The Lampf Court viewed the three-year limit as a "period of repose," intended to impose an "outside limit" not subject to tolling principles. Id. at 363 (citation omitted). As the Supreme Court stated:

> The 1-year period, by its terms, begins after discovery of the facts constituting the violation, making tolling unnecessary. The 3-year limit is a period of repose inconsistent with tolling ... Because the purpose of the 3-year limitation is clearly to serve as a cutoff, we hold that tolling principles do not apply to that period.

Id. Thus, tolling principles do not apply to the five-year statute of repose.

Cohen argues that "the degree to which Telsey willfully and fraudulently concealed Stelnick's felony conviction for fraud warrants application of the doctrine of fraudulent concealment and operates to toll the statute of limitations." (Plt.'s Opp'n Br. 3-4.) However, the Supreme Court made clear in Lampf that the five year statute of repose is an absolute cut-off, so

15

no level of willful and fraudulent concealment will act to toll it.  Thus, "statutes of repose may expire before a plaintiff discovers he has been wronged, or even before damages have been suffered at all."  In re Exxon Mobile Corp. Sec. Litig., 500 F.3d 189, 199 (3d Cir. 2007).  Cohen cites no controlling authority to the contrary.

Telsey argues that § 1658(b) applies to Count One through Count Six, barring all claims as untimely.  The statutory scheme is more subtle than Tesley acknowledges.  The statute of limitations and repose set out in 28 U.S.C. § 1658(b) applies to Counts One,[1] Two, and Three of the Complaint because those federal securities claims require proof of fraud as an element.  See In re Exxon Mobile, 500 F.3d at 196-97.  However, § 1658(b) does not apply to Count Four for violation of § 11, 15 U.S.C. § 77k, or Count Six for violation of 15 U.S.C. § 78j-1(m).  Claims for violation of § 11 have a unique set of statute of limitations and repose, set out in § 13, codified at 15 U.S.C. § 77m.  Section 13 states:

> No action shall be maintained to enforce any liability created under section 77k or […] unless brought within one year after the discovery of the untrue statement or the omission, or after such discovery should have been made by the exercise of reasonable diligence […] In no event shall any such action be brought to enforce a liability created under section 77k […] of this title more than three years after the security was bona fide offered to the public […]

15 U.S.C. § 77m.  Thus, a § 11 claim is governed by a one-year statute of limitations and a three-year statute of repose.  Claims for § 20(a) are predicated on a violation of another securities statute, so the statute of limitations is determined by the underlying claim.  Section 78j-1(m), as discussed below, does not provide a private right of action, and the court declines to imply one, so any statute of limitations for this claim need not be discussed.

---

[1] The courts are divided on the question of whether or not to imply a private right of action regarding § 17(a), with the majority of courts holding that private right of action may not be implied.  Maldonado v. Dominguez, 137 F.3d 1, 7 (1st Cir. 1998) (collecting cases that have refused to recognize a private right of action).  For the limited purpose of determining the timeliness of Cohen's claim, the court will assume that a private right of action does exist.

The next question is when the statute of limitations and repose began to run for Counts One, Two and Three.  By its terms, the repose period in § 1658(b)(2) begins to run on the date of the alleged violation.  The Court of Appeals has ruled that for § 10(b) claims, the violation, for the purpose triggering the statute of repose, is the alleged misrepresentation.  In re Exxon Mobil, 500 F.3d at 200.  Counts One through Count Three are based on Cohen's allegation that Telsey misrepresented and omitted reference to Stelnick's conviction in public filings with the SEC.  Thus, Counts One, Two and Three will be barred by the five-year statute of repose if the alleged misrepresentations or omissions took place before April 30, 2004.  The last filing that Cohen alleges omitted reference to Stelnick's conviction was the 10-Q filed on December 23, 2003.  Thus, Counts One, Two and Three are stale under the statute of repose.

Although it is not necessary to determine when the statute of limitations ran, since § 1658(b) provides that the claim may not be brought after the earlier of the end of either period, the court will also examine the statute of limitations to address Cohen's contentions.  Cohen claims that the court should toll the statute of limitations because he did not "discover" his claims against Telsey until he took the depositions of former V-Formation directors and officers in 2008.  The two-year statute of limitations accrues when a plaintiff discovers the facts constituting the violation.  28 U.S.C. § 1658(b).  In paragraph nine of the State Court Complaint filed October 14, 2005, Cohen alleged that

> [u]pon information and belief, in or around 1983, Stelnick was indicted by the State of New Jersey on charges that he sold fraudulent insurance policies to New Jersey senior citizens.  Stelnick was found guilty of those charges in May 1986 and was sentenced to nine years in prison.

Cohen knew about the conviction as early as October 14, 2005.  Investors are presumed to have read public information related to their investments, such as SEC filings.  See Debenedictis v. Merrill Lynch & Co., 492 F.3d 209, 216 (3d Cir. 2008).  Thus, Cohen cannot claim that he was

unaware of the omission from public filings of information about Stelnick's conviction after October 14, 2005; in October 2005, he knew about the conviction and is presumed to know that the SEC filings failed to provide all, or in some filings, any relevant information about the conviction.  The fact that he claims not to have known about Telsey's specific role in the public filings until 2008 is insufficient to toll the statute of limitations.  "Plaintiffs cannot avoid the time bar simply by claiming they lacked knowledge of the details for narrow aspects of the alleged fraud.  Rather, the clock starts when they should have discovered the general fraudulent scheme."  Id.  Further, Cohen's assertion that he did not know about Telsey's role in the alleged fraud is unsupported by the information publicly available.  Telsey's name appears as the contact person in various SEC filings, including, e.g., a 10-K filed March 30, 2004 and a 10-Q filed May 15, 2003.  Counts One, Two, and Three are time-barred under the statute of limitations as well as the statute of repose.

The court now turns to the limitations for Count Four.  The limitations scheme for § 11 periods includes a one-year statute of limitations and a three-year statute of repose.  Both have long since expired in this case.  Section 11 provides a private right of action for an untrue statement or omission of a material fact in a registration statement.  The only registration statement V-Formation issued was filed August 22, 2000.  Thus, the statute of repose clearly ran many years before Cohen filed this action in April 2009.  The statute of limitations accrues one year after the discovery of the untrue statement or the omission.  Cohen knew about the conviction and should have known that the Registration Statement did not fully explain the conviction at the very latest on October 14, 2005, when he filed his State Court Complaint.  Count Four is time-barred.  Accordingly, Counts One, Two, Three, and Four will be dismissed.

**E.      Count 6:  Violation of the Sarbanes-Oxley Act**

Cohen alleges that Telsey violated § 301 of the Sarbanes-Oxley Act, codified at 15

U.S.C. § 78j-1(m), by failing to ensure that the Audit Committee of the Board of Directors was

constituted of non-management members of the Board.  Telsey argues that no private right of

action exists under § 78j-1(m).  Cohen requests that the court imply one, arguing that there is no

legal precedent that precludes the implication of a private cause of action under § 78j-1(m).

The question of the existence of a statutory cause of action is one of statutory

construction.  Touche Ross & Co. v. Redington, 442 U.S. 560, 567 (1979).  In order for the

courts to imply a private statutory right of action, the text of the statute must be phrased in terms

of the persons benefitted.  Id. (declining to imply a private right of action in a previous version of

§ 17(a) of the Securities Act, because the statute simply required broker-dealers and others to

keep such records and file such reports as the Commission may prescribe, rather than conferring

rights on private parties).  The statute here is not phrased in terms of any class of persons

benefitted, nor does it create rights for private parties.  Section 78j-1(m) simply provides that the

SEC shall enact a rule directing the national securities exchanges and associations to prohibit the

listing of any security of an issuer that is not in compliance with the requirements of any portion

of paragraphs (2) through (6).  Paragraph (3), on which Cohen premises his claim, provides that

audit committees should be independent, and describes the criteria for independence.  The text of

subsection (m) does not support a private right of action.  Accordingly, Cohen's claim for relief

under that section will be dismissed.

**F.     Count 5:  Violation of § 20(a) of the Exchange Act**

Cohen alleges that Telsey should be liable under § 20(a) of the Exchange Act, codified at

15 U.S.C. § 78t(a), because Telsey had a position of authority that allowed him to generate

and/or control the contents of V-Formation's various public filings, through which Telsey

provided the public with false and misleading information.  The statute provides that "[e]very person who [...] controls any person liable under any provision of this chapter or of any rule or regulation thereunder shall also be liable jointly and severally with and to the same extent as such controlled person to any person to whom such controlled person is liable, unless the controlling person acted in good faith and did not directly or indirectly induce the act or acts constituting the violation or cause of action."  15 U.S.C. § 78t(a).

It is well-settled that § 20(a) controlling person liability is premised on an independent violation of the federal securities laws.  In re Rockefeller Ctr. Prop., Inc. Sec. Litig., 311 F.3d 198, 212 (3d Cir. 2002).  Since all of Cohen's other securities claims will be dismissed, Telsey cannot be liable under § 20(a).  Count Five will be dismissed.

## G.     Count 7:  Common Law Fraud

The court will first address a statute of limitations issue raised by Cohen in a footnote in his brief in opposition to Telsey's motion.  Cohen correctly noted that the statute of limitations applicable to common law fraud actions under New Jersey law is six years.  N.J. Stat. Ann. § 2A:14-1 (providing a six-year statute for "any tortious injury to real or personal property"); Roberts v. Magnetic Metals Co., 611 F.2d 450, 453 (3d Cir. 1979).  A cause of action accrues when the plaintiff knew or should have known of its existence.  Southern Cross Overseas Agencies, Inc. v. Wah Kwong Shipping Group, Ltd., 181 F.3d 410, 425 (3d Cir. 1999).  When the gist of the action is fraud concealed from the plaintiff, the statute begins to run on discovery of the wrong or of facts that reasonably should lead the plaintiff to inquire into the fraud.  Id. (citing Lopez v. Swyer, 62 N.J. 267 (1973)).  The court is limited to the facts as pled by the Complaint, related materials, and documents of which the court took judicial notice.  Under that set of facts, but in the context of the two-year statute of limitations for federal

securities law, Telsey argued that Cohen knew or should have known of the alleged omission by October 14, 2005 at the latest. The common law fraud claim appears timely under the facts currently available, since the court has no factual basis at this stage in the litigation to support an inference that Cohen knew or should have known of the omissions before October 2005. The court will now turn to the question of the sufficiency of the pleadings.

Cohen claims that Telsey's actions amount to common law fraud. Under New Jersey law, a plaintiff must allege that the defendant: (1) made a material misrepresentation of a presently existing or past fact; (2) with knowledge of its falsity; (3) intending that plaintiff rely thereon; (4) that plaintiff reasonably relied; and (5) as a result sustained damages. Liberty Mut. Ins. Co. v. Land, 892 N.J. 163, 174 (2004). The Complaint alleges that Cohen relied on the public filings to make his investment decisions; that Telsey made misrepresentations and omissions in those filings; and that Cohen suffered damages as a result of his reliance on Telsey's misrepresentations and omissions.

Cohen's Complaint insufficiently pleads the element of knowledge under Rule 9(b). Although "[m]alice, intent, knowledge and other conditions of mind of a person may be alleged generally," a plaintiff is still required to provide factual allegations that support his legal theory. Cohen argues in his brief that knowledge and intent are supported by facts alleged in paragraph five ("Telsey…fraudulently induced Cohen to invest in V-Formation based on willfully false and material misrepresentations and omissions"); paragraph 53 ("Telsey, because of his position of authority…caus[ed] the company to disseminate to the public the materially false and misleading information"); and paragraphs 40, 46, 54 (all asserting in slightly different language that the information about Stelnick's conviction was "information that any reasonable investor would

have considered important in making the decision to invest in V-Formation"). Boilerplate and conclusory allegations do not suffice under Rule 9(b).

Here, the limited facts that Cohen alleged do not support an inference that Telsey acted knowingly or with intent to defraud. The Registration Statement that made a misleading representation about Stelnick's conviction was filed in August 2000, well before Cohen alleges Telsey was engaged as V-Formation's securities counsel in March 2001. The April 2001 8K, which made the same allegedly misleading statement about Stelnick's conviction, does not bear Telsey's name anywhere. Cohen offers no factual allegations that support an inference that Telsey knew the statement in the August 2000 and April 2001 public filings were misleading, or even knew that those statements were made.

Further, Telsey notes that 17 C.F.R. § 229.401(f)(2) only requires the disclosure of certain events, such as criminal convictions, that occurred "during the past five years and that are material to an evaluation of the ability or integrity of any director[…]." This rule supports an inference that even if Tesley did know something about the conviction, he might have advised his client, V-Formation, that is was unnecessary to include the conviction in public filings, because by 2001 the conviction was more than 15 years old. None of the facts alleged support an inference that Telsey knew about the conviction or intended investors like plaintiff to rely to their detriment on the statements published before his tenure as securities counsel, or on the omission of reference to the conviction in subsequent filings.

Reliance and loss causation are required elements of common law fraud. Cohen alleges that he invested "an approximated total of $1.3 million with V-Formation …including … investments in excess of $700,000 after Telsey orchestrated V-Formation's merger with Buckeye to become a publicly reporting company." (Compl. ¶ 27.) Cohen also alleges that he read public

22

filings in making investment decisions.  Reliance on public filings is reasonable.  These facts support an inference that Cohen relied on the omission of information during Telsey's tenure as securities counsel for up to $700,000 of his investments in V-Formation.  These allegations provide sufficient detail at the pleadings stage to establish reliance.

Under New Jersey tort law, "[t]he test of proximate cause is satisfied where . . . conduct is a substantial contributing factor in causing [a] loss."  McCabe v. Ernst & Young, LLP, 494 F.3d 418, 438 (3d Cir. 2007).  That is, even if damage would have occurred in the absence of a defendant's conduct, liability may be imposed upon a showing that the conduct was a substantial factor in causing the harm alleged."  Vuocolo v. Diamond Shamrock Chems. Co., 240 N.J. Super. 289, 295 (App. Div. 1990).  The allegations support an inference that the failure to disclose information about Stelnick's conviction was a "substantial factor" in Cohen's loss of part of his investment in V-Formation.  In other words, even if the fraud allegedly perpetrated on Cohen by senior V-Formation management was a major factor causing the loss of Cohen's investments, Telsey's failure to disclose the information may have been a substantial factor in Cohen's continued investment in the company.  Cohen has adequately pled facts giving rise to an inference that he reasonably relied on Telsey's omissions when he continued to invest in V-Formation and that the reliance was a cause of his loss.  However, because the Complaint fails to adequately plead knowledge, Count Seven will be dismissed.

**H.     Count 8:  Negligence**

Neither party raised the issue of statute of limitations for Count Eight, but the court will discuss the issue briefly to determine whether this cause of action is time-barred.  Negligence claims based on an economic loss are governed by a six-year statute of limitations.  N.J. Stat. Ann. § 2A:14-1 (providing a six-year statute for "any tortious injury to real or personal

property"); see McGrogan v. Till, 167 N.J. 414 (2001) (explaining the difference between N.J.

Stat. Ann. § 2A:14-1 and § 2A:14-2, describing the § 2A:14-2 two-year statute of limitations as

applying to actions involving "injury to the person").  As is the case with the common law fraud

claim, the factual landscape available to the court at this stage points to Cohen's claim having

accrued on October 14, 2005 at the latest, so the claim appears to be timely at this stage in the

litigation.  See Southern Cross, 181 F.3d at 425.

Cohen alleges that Telsey owed him a duty, as securities counsel and a fellow

shareholder, to disclose information in public filings truthfully and to provide legal advice to V-

Formation with reasonable care to prevent violations of the Sarbanes-Oxley Act by the company.

The Complaint alleges that Telsey breached that duty when he (1) prepared, reviewed and/or

authorized public filings containing material misrepresentations or omissions of fact; and (2)

allowed V-Formation's Audit Committee to be comprised of senior management, who

systematically misappropriated, embezzled, and converted company assets to its own personal

use.  (Compl. ¶¶ 69-70.)

As a preliminary matter, the court will address the scope of Cohen's allegations.  In

Cohen's brief in opposition to Telsey's motion to dismiss, Cohen seems to limit his claim for

negligence to Telsey's alleged duty of disclosure, rather than Telsey's alleged negligence in

allowing the Audit Committee to be comprised as it was.  Cohen does not address the Audit

Committee issue at all in the portion of his brief dealing with his claim for negligence.

Therefore, the court will read Cohen's brief to mean that he no longer alleges that Telsey was

negligent with respect to the composition of the Audit Committee.  Cohen also does not address

Telsey's liability in negligence as a fellow shareholder at all in his brief, nor does he respond to

any of Telsey's arguments on that point.  Therefore, the court will read Cohen's brief to mean

that he no longer alleges that (1) Telsey was negligent in regard to the Audit Committee of V-Formation; or that (2) Telsey owed him a duty as a fellow shareholder.  Rather, all of Cohen's arguments in the brief relate to the alleged misrepresentations and omissions that Telsey made in public disclosures and to Telsey's role as securities counsel.

Additionally, the court notes that all of the New Jersey cases cited in support of Cohen's negligence claim actually refer to the New Jersey cause of action for negligent <u>misrepresentation</u>. Since Cohen has limited his arguments to Telsey's alleged misrepresentations and omissions, and because the New Jersey law cited by Cohen all relates to negligent misrepresentation rather than negligence, the court will construe Count Eight as a claim for negligent misrepresentation. <u>See</u> <u>Tolle v. Carroll Touch, Inc.</u>, 977 F.2d 1129, 1134 (7th Cir. 1992) ("[A] complaint sufficiently raises a claim even if it points to no legal theory or even if it points to the wrong legal theory as a basis for that claim, as long as relief is possible under any set of facts that could be established consistent with the allegations.") (internal quotations and citations omitted) (construing plaintiff's claim as an ERISA claim under a section of ERISA not alleged in the complaint).

A claim for negligent misrepresentation "requires the plaintiff to prove that the putative tortfeasor breached a duty of care owed to plaintiff and that plaintiff suffered damages proximately caused by that breach."  <u>Highlands Ins. Co. v. Hobbs Group</u>, 373 F.3d 347, 351 (3d Cir. 2004) (citing <u>Weinberg v. Dinger</u>, 106 N.J. 469, 524 A.2d 366, 373 (1987)).  The elements of negligent misrepresentation are essentially the same as those of common law fraud except negligent misrepresentation does not require scienter.  "Negligent misrepresentation is . . . [a]n incorrect statement, negligently made and justifiably relied on, [and] may be the basis for recovery of damages for economic loss . . . sustained as a consequence of that reliance."

Kaufman v. i-Stat Corp., 165 N.J. 94, 109 (2000) (quoting H. Rosenblum, Inc. v. Adler, 93 N.J.

324, 334 (1983), superseded by statute on other grounds, (internal quotations omitted)).  To

prove a claim of negligent misrepresentation under New Jersey law, the plaintiff must

demonstrate that "1) the defendant negligently provided false information; 2) the plaintiff was a

reasonably foreseeable recipient of that information; 3) the plaintiff justifiably relied on the

information; and 4) the false statements were a proximate cause of the plaintiff's damages."

McCall v. Metropolitan Life Ins., 956 F. Supp. 1172, 1186 (D.N.J. 1996).

        Thus, the first issue to be addressed is whether Telsey owed a duty to Cohen.  "The

question of whether a duty exists is a matter of law properly decided by the court, not the jury."

Kernan v. One Washington Park Urban Renewal Assocs., 154 N.J. 437, 445 (1998) (quoting

Carter Lincoln-Mercury, Inc. v. EMAR Group, Inc., 135 N.J. 182, 194 (1994)) (internal

quotations omitted).

        In determining whether a duty of care exists, a court's "analysis involves identifying,

weighing, and balancing several factors – the relationship of the parties, the nature of the

attendant risk, the opportunity and ability to exercise care, and the public interest in the proposed

solution."  Kernan, 154 N.J. at 445 (quoting Carter Lincoln-Mercury, 135 N.J. at 194 (internal

quotation marks omitted)).

        Telsey contends that he owed no duty to Cohen in his role as securities counsel.  Telsey

offers arguments culled from various sources in support of this contention.  Telsey cites to the

New Jersey Rules of Professional Conduct for the proposition that an attorney retained to

represent an organization represents the organization as distinct from its shareholders.  See

R.P.C. 1.13.  Telsey cites to the Code of Federal Regulations for the proposition that the

securities regulations provide for attorney disclosures in specific circumstances, 17 C.F.R. §

205.3, and nothing in the section regarding required disclosures creates a private right of action against counsel, 17 C.F.R. § 205.7.  Telsey cites a New Jersey Superior Court, Appellate Division, case to support his claim that there is no New Jersey decisional law addressing a shareholder's right to sue the corporation's counsel.  Schulman v. Wolff & Samson, P.C., 401 N.J. Super. 467, 477-78 (App. Div. 2008) (noting that the question of "whether corporate counsel in a context of a closely held corporation owes a duty to the minority shareholders" was an issue of first impression, and declining to decide the question because it was not necessary to the judgment in that case).  Telsey counsels the court to find that based on the absence of state decisional law addressing a shareholder's right to sue the corporation's counsel, coupled with Telsey's arguments based on professional responsibility and SEC regulations, state law does not allow a cause of action based on the duty Cohen alleges Tesley owed him.  Telsey asks the court to dismiss the claim.

The court must, then, determine whether under New Jersey law, a corporation's counsel has a duty to a shareholder in this situation.  Telsey claims this question presents an issue of first impression and Cohen replies that New Jersey law provides ample support for his cause of action.

When a federal court applies state substantive law, it must apply the law as decided by the highest court of the state whose law governs the action.  See Erie R.R. Co. v. Tompkins, 304 U.S. 64, 78 (1938); Orson, Inc. v. Miramax Film Corp., 79 F.3d 1358, 1373 (3d Cir. 1996). When a state's highest court has not addressed the precise question before the court, a federal court must predict how the state's highest court would resolve the issue.  Borman v. Raymark Indus., Inc., 960 F.2d 327, 331 (3d Cir. 1992).  Although not dispositive, decisions of state intermediate appellate courts should be accorded significant weight in the absence of an

indication that the highest state court would rule otherwise.  Rolick v. Collins Pine Co., 925 F.2d 661, 664 (3d Cir. 1991), cert. denied, 507 U.S. 973 (1993).

Cohen contends that the court should look to Petrillo v. Bachenberg, 139 N.J. 472, 479 (1995), in which the Supreme Court of New Jersey considered a claim for an attorney's negligent misrepresentation to a non-client.   In that case, the buyer of real estate received a misleading test report from the seller's attorney and relied on it in making the purchase.  Id.  The Supreme Court found that in certain circumstances, an attorney knows or reasonably should know that a non-client will rely on the attorney's representation or opinion, and concluded that this should give rise to a limited duty.  Id. at 483-84.  In its analysis, the Supreme Court reviewed its own precedents to examine the balance between the attorney's duties to the client and the potential duty to a non client.  Id. at 479-80.  The Petrillo Court stated that:  "[w]hether an attorney owes a duty to a non-client third party depends on balancing the attorney's duty to represent clients vigorously, Rules of Professional Conduct, Rule 1.3 (1993), with the duty not to provide misleading information on which third parties foreseeably will rely, Rules of Professional Conduct, Rule 4.1 (1993)."  Id. at 479.  The Petrillo Court also reviewed various sources for persuasive authority, including decisions of other jurisdiction and scholarly commentaries.  The Petrillo Court cited as persuasive a case from the Court of Appeals for the Sixth Circuit, Molecular Technology Corp. v. Valentine, 925 F.2d 910, 915-17 (1991).   The lawyer in Molecular Technology reviewed and amended the allegedly misleading document and knew that it was going to all potential investors.  Id.  The Sixth Circuit, on a negligent misrepresentation claim based on Michigan law,

> determined that a lawyer who prepared a private offering statement for his client's corporate debentures owed a duty of care to potential investors whom the attorney knew, or should have known, would rely on the statement. The court [in Molecular Technology] held that Michigan law 'imposes a duty in favor of all

those third parties who defendant knows will rely on the information and to third parties who defendant should reasonably foresee will rely on the information.' <u>Id.</u> at 216.  <u>But see In re Rospatch Sec. Litig.</u>, 760 F. Supp. 1239, 1261 (W.D.Mich.1991) (distinguishing <u>Molecular Technology</u>, which involved closely-held corporation, from cases involving securities offerings of large, publicly-held corporations).

<u>Petrillo</u>, 139 N.J. at 483.

In its analysis of the facts at issue in the particular case before it, the <u>Petrillo</u> Court noted that "[t]he roles and relationships of the parties color our assessment." <u>Id.</u> at 486.  The Supreme Court also noted the importance of "the objective purpose of documents such as opinion letters, title reports, or offering statements, and the extent to which others foreseeably may rely on them" in the Court's determination of the scope of a lawyer's duty in preparing such documents.  <u>Id.</u> at 485.  The defendant-attorney in the <u>Petrillo</u> case had extracted information from a set of reports and only presented the buyer with the portions of the reports containing results favorable to his client.  <u>Id.</u> at 477.  Therefore, the Supreme Court determined, the attorney "controlled the risk that the composite report would mislead a purchaser.  Fairness suggests that he should bear the risk of loss resulting from the delivery of a misleading report."  <u>Id.</u> at 487.  The court listed a number of steps that the attorney could have taken in order to make his presentation of the reports not misleading.  <u>Id.</u>

The Supreme Court has further shaped its law regarding the reliance of third parties on negligent misrepresentations by attorneys.  In <u>Banco Popular N. Am. V. Gandi</u>, 184 N.J. 161 (2005), the Supreme Court overruled the Appellate Division's decision to dismiss a claim for negligent misrepresentation against an attorney.  The complaint alleged liability of an attorney to plaintiff-bank for the attorney's role in negotiating the terms of a loan and issuing an opinion letter.  <u>Id.</u> at 185.  The Supreme Court noted that the attorney had a duty, since he should have known that his client was misrepresenting information to the bank, to either counsel the client to

tell the truth or to discontinue his representation.  Id. at 186.  Rather than take such steps, the
attorney assisted the client in securing further loans and wrote an opinion letter of the client's
behalf.  Id.

Although the Supreme Court has not specifically addressed the duty of an attorney for
misrepresentations and omissions in public SEC filings, the court is persuaded that, were the
Supreme Court to consider such a case, it would find that an attorney in charge of the SEC
filings for a company has a duty to shareholders in the context of a closely held corporation.
Specifically, the court takes note of Petrillo's instruction to examine the character of the
documents at issue.  Petrillo, 139 N.J. at 485.  Public filings with the SEC, like opinion letters,
title reports, and offering statements, are documents that will foreseeably induce reliance.  See id.
An attorney preparing public filings for a corporation knows or reasonably should know that a
non-client will rely on the attorney's representation or opinion, giving rise to a limited duty.  See
id. at 483-84.  Finally, the court takes note that the Petrillo Court explained that the Sixth Circuit
in Molecular Technology had carved out a similar duty under Michigan law for a lawyer in the
specific context of a closely held corporation.  V-Formation was a closely held corporation.  The
court finds that New Jersey law supports a cause of action by a shareholder in a closely held
corporation against the corporation's securities counsel for negligent misrepresentations or
omissions in the preparation of SEC filings.

Telsey's arguments based on case law from the Appellate Division, securities law, and
professional responsibility, do not alter this determination.  Telsey offers a 2008 decision by the
Appellate Division, which states that the question of "whether corporate counsel in a context of a
closely held corporation owes a duty to minority shareholders" was an issue of first impression.
Schulman, 401 N.J. Super. at 477-78.  The Court of Appeals has instructed that although not

dispositive, decisions of state intermediate appellate courts should be accorded significant weight in the absence of an indication that the highest state court would rule otherwise.  Rolick, 925 F.2d at 664.  The court does not consider the Appellate Division's statement in Schulman to affect its determination that the Supreme Court would recognize a duty in the case presently before the court.  The Appellate Division in Schulman declined to address an issue of law that was not before it because the plaintiff had withdrawn that cause of action.  Schulman, 401 N.J. Super. at 478.  Therefore, the Appellate did not make a decision of law on the issue that could in any way conflict with this court's determination.

Telsey refers the court to the Rules of Professional Conduct for the proposition that an attorney retained to represent an organization represents the organization as distinct from its shareholders.  R.P.C. 1.13.  This argument does not affect the court's determination that Telsey had a duty to Cohen.  The Petrillo Court specifically takes into account the tension between the duty an attorney owes to represent her client vigorously and the duty not to provide misleading information on which third parties forseeably will rely.  Petrillo, 139 N.J. at 479.  The Supreme Court's determination in Petrillo demonstrates that in certain situations, like the one currently at bar, the Supreme Court will find that one duty outweighs the other.  The fact that the client in Petrillo was a natural person, whereas the client in the present matter was V-Formation, a corporation, does not change the court's reasoning.

Finally, Telsey argues that 17 C.F.R. § 205.3 creates specific disclosure duties on corporate attorneys representing issuers of securities, and that the regulation states in another section that nothing therein regarding disclosures creates a private right of action against an attorney.  17 C.F.R. § 205.7.  Telsey is correct that, under that regulation, no private right of action exists for a violation of the duty of an attorney to report a material violation to certain

parties in certain situations.  However, the fact that securities law does not provide a private cause of action for failure to report a material violation does not affect the court's determination that Telsey had a duty under New Jersey's case law regarding negligent misrepresentation.  New Jersey law provides Cohen's legal cause of action here, not federal securities law.

Having determined that a duty does exist, the court will now turn to whether Cohen adequately pled a claim for negligent misrepresentation.  To prove a claim of negligent misrepresentation under New Jersey law, the plaintiff must demonstrate that "1) the defendant negligently provided false information; 2) the plaintiff was a reasonably foreseeable recipient of that information; 3) the plaintiff justifiably relied on the information; and 4) the false statements were a proximate cause of the plaintiff's damages."  McCall, 956 F. Supp. at 1186.  Scienter is not a required element of negligent misrepresentation.  At this stage of the litigation Cohen has alleged that Telsey, as securities counsel from March 2001 to 2005, should have learned of the prior misrepresentations and omissions, and should have taken steps to rectify those misrepresentations, lest shareholders like Cohen be mislead by them.  The court has already determined in its examination of the factors for common law fraud that Cohen adequately pleads facts giving rise to an inference that he reasonably relied on Telsey's omissions when he continued to invest in V-Formation and that the reliance was a proximate cause of his loss.  Such allegations are sufficient to survive a motion to dismiss.  Thus, Count Eight of the Complaint for negligent misrepresentation will survive the motion to dismiss.

I.      **Motion to Amend the Complaint**

Generally, when a defendant moves to dismiss based on failure to state a claim, a plaintiff can amend the complaint once as a matter of course without leave of the court.  Fed. R. Civ. P. 15(a).  After amending once or after an answer has been filed, the plaintiff may amend only with

leave of the court or the written consent of the opposing party, but "leave shall be freely given when justice so requires."  Rule 15(a); <u>Shane v. Fauver</u>, 213 F.3d 113, 116 (3d Cir. 2000).  Accordingly, if a claim is vulnerable to dismissal under Rule 12(b)(6), but the plaintiff moves to amend, leave to amend generally must be granted unless the amendment would not cure the deficiency.  <u>Id.</u>  Among the grounds that could justify a denial of leave to amend are undue delay, bad faith, dilatory motive, prejudice, and futility.  <u>In re Burlington Coat Factory Sec. Litig.</u>, 114 F.3d 1410, 1434 (3d Cir. 1997).  "Futility" means that the complaint, as amended, would fail to state a claim upon which relief could be granted.  <u>Id.</u>

The Proposed Amended Complaint ("PAC") alleges a number of additional facts.  Cohen alleges that on or about August 23, 2000, prior to V-Formation's merger with Buckeye, V-Formation filed a Registration Statement with the SEC.  (PAC ¶ 20.)  The section disclosing the backgrounds of V-Formation's senior management, the paragraph dedicated to Chairman, CEO and founder Richard Stelnick read, in pertinent part, as follows:  "[f]ifteen years ago, Mr. Stelnick was involved in a case relating to the failure to make proper disposition of property, and while Mr. Stelnick vehemently denied the allegations, he was convicted and served time for a short period."  Following the filing of the Registration Statement, the SEC issued a comments letter dated September 22, 2000, wherein Special Counsel directed the company to:

> [r]evise to more clearly describe Mr. Stelnick's conviction.  Explain what Mr. Stelnick was convicted of, what you mean by 'failure to dispose of property,' and the amount of time he was incarcerated.

(<u>Id.</u> ¶ 22.)  Rather than make the modifications set forth in the SEC letter, V-Formation withdrew its Registration Statement in March 2001.  (<u>Id.</u> ¶ 23.)  After Telsey became securities counsel, V-Formation's 10-KSB and 10-QSB statements did not reference Stelnick's conviction at all.  (<u>Id.</u> ¶ 26.)

Shortly following V-Formation's discontinuance of operations, Cohen commenced a lawsuit in October 2005 in the Superior Court of New Jersey, Law Division, Essex Count, against certain V-Formation officers and directors, seeking an accounting and averring breach of contract, breach of implied covenant of good faith and fair dealing, conversion, and tortuous interference with prospective economic advantage.  (Id. ¶ 33.)  During the latter half of 2008, Cohen's counsel took depositions in that suit of officers and directors, including Chairman and then-CEO Richard Stelnick, CFO Robert Miragliotta, Executive Vice President Theodore Ellenis and General Counsel Louis Muggeo. (Id. ¶ 34.)  During Stelnick's deposition, he acknowledged that he was found guilty in 1986 of mishandling approximately $240,000 of insurance premiums collected from over 200 clients, for which he was sentenced to nine years in prison.  (Id. ¶ 35.) Cohen alleges that as a result of those depositions, he learned that:  (1) Telsey was the firm's securities counsel from 2001 through the time that it ceased operations in 2005; (2) senior management relied exclusively on Telsey during this time period to make appropriate public filings with the SEC on behalf of the company, to act as its "focal point" in gathering all information in connection thereto and to serve as its point of contact in communications with the SEC; (3) senior management relied exclusively on Telsey during this time period to ensure that it was compliant with the Sarbanes Oxley Act, Accredited Investor section (Regulation D); (4) Telsey distributed and maintained director-and-officer questionnaires in conjunction with the preparation of V-Formation public filings; and (5) Telsey advised management that Stelnick's criminal history need not be disclosed on public filings and other publicly disseminated documents.  (Id. ¶ 36.)  Cohen did not provide any transcripts or parts of transcripts from those depositions.  Subsequent to the depositions, Cohen's counsel contacted Telsey to attempt to

further investigate these and other representations, but Telsey declined to offer any information. (Id. ¶ 37.)  Cohen does not allege that he has deposed Telsey.

Cohen will not be granted leave to amend the Complaint as to Counts One, Two, Three, and Four, because those claims are time-barred, so any amendment would be futile and cause undue delay.  See In re Burlington Coat Factory Sec. Litig., 114 F.3d 1410, 1434 (3d Cir. 1997). The new facts alleged in the PAC do not alter the court's analysis of the statutes of repose and limitations for Counts One, Two, Three and Four.  As for the five-statute of repose applicable to Counts One, Two and Three, Cohen does not allege that Telsey made any omissions or misrepresentations about Stelnick's conviction after the December 23, 2003 10-Q.  The PAC's allegations likewise do nothing to alter the court's conclusion that the two-year statute of limitations applicable to Counts One, Two and Three began to run on October 14, 2005 at the latest.  Similarly, the PAC offers no new allegations that would cause the court to reconsider its determination that the three-year statute of repose applicable to Count Four began to run in August 2000 when the Registration Statement was filed.  Further, Cohen has not presented facts that merit a reconsideration of the court's determination that Cohen had enough facts as of October 14, 2005 at the latest to allow the one-year statute of limitations to begin to run.  Leave to file an amended complaint will not be granted for Counts One, Two, Three or Four.

The court dismissed Count Seven for common law fraud because the pleadings lacked the particularity required by Rule 9(b) for the element of knowledge.  The Complaint did not plead facts sufficient to allow the court to draw an inference that Telsey acted with knowledge or intent to defraud.  The PAC's additional allegations, in contrast, when taken in the light most favorable to Cohen, allow the court to reasonably draw an inference that Telsey acted with knowledge. The court determined that the reasonable inference to be drawn from the facts presented in the

Complaint was that Telsey may not have even known about the previous disclosures, and that even if he did, he may have advised his client in reliance on 17 C.F.R. § 229.401(f)(2), which only requires the disclosure of certain events, such as criminal convictions, that occurred "during the past five years and that are material to an evaluation of the ability or integrity of any director[…]."

The court takes note specifically of the PAC's factual allegations about Telsey's primary role in directing the content of public filings for V-Formation starting in March 2001; the promulgation of the incomplete statement about Stelnick's conviction in the April 2001 8K; the SEC letter describing the deficiencies in the disclosure; the fact that Telsey kept information from questionnaires of directors and officers about their backgrounds; and the fact that instead of addressing the SEC's concerns, V-Formation withdrew its Registration Statement in March 2001, while Telsey was in charge.  Taken together, these allegations support a reasonable inference that Telsey knew of the conviction and the letter from the SEC but failed take steps to correct the misleading information about Stelnick's conviction promulgated on the public as a result of the August 2000 registration statement, and even allowed the same misleading information to be promulgated in the April 2001 8K.  A duty to disclose information arises when it is necessary to correct an inaccurate, incomplete, or misleading prior disclosure acts as a material omission.  See Oran v. Stafford, 226 F.3d 275, 286 (3d Cir. 2000).  Thus, even if Telsey was not under an obligation, according to 17 C.F.R. § 229.401(f)(2), to disclose the conviction, it is reasonable to infer that he knew about the misleading information that was already in the Registration Statement and could have corrected the Registration Statement instead of withdrawing it.  Furthermore, once the SEC letter announced the insufficiency of the disclosure, Telsey should not have allowed the April 2001 8K to promulgate the same insufficient

disclosure.  See United States v. Hill, 298 F. Supp. 2d 1221, 1233 (D. Conn. 1969) (holding that even if defendant was not aware of defects in public filing when disseminated, the SEC's comment letter put him on notice that the document was misleading and inadequate).  Cohen has alleged sufficient facts that raise a reasonable inference that Telsey acted with knowledge.  The court has already determined that Cohen sufficiently pled reliance and loss causation.  Cohen will be allowed to present evidence to support his claim of common law fraud.  Cohen is granted leave to amend his complaint for Count Seven.

The PAC does not give the court reason to grant Cohen leave to amend Counts Five or Six because filing an amended complaint would be futile and cause undue delay.  The court dismissed Count Six on the basis that, as a matter of law, no private right of action exists under 15 U.S.C. § 78j-1(m).  Therefore, no new factual allegations will change the court's determination for Count Six.  Count Five was dismissed because all of Cohen's other securities claims were dismissed.  A claim under § 20(a) is derivative and must be predicated on a separate violation of the federal securities statutes.  Since the PAC does not give the court reason to allow Cohen to file an amended complaint for Counts One, Two, Three, Four or Six, the court cannot allow leave to file an amended complaint for Count Five.  Leave to file an amended complaint will not be granted for Counts Five, Six or Eight.

### III.  Conclusion

Defendant's Rule 12(b)(6) motion to dismiss is granted on Count One through Count Seven, and denied for Count Eight.  Plaintiff's cross-motion for leave to amend the complaint is denied for Count One through Count Six, but granted for Count Seven.  The court will enter an order implementing this opinion.

_____**s/ Dickinson R. Debevoise**_____

DICKINSON R. DEBEVOISE, U.S.S.D.J.

Dated: October 30, 2009